Providian National Bank ("Providian"), the defendant in a proceeding in the Barbour Circuit Court, appeals from the trial court's order denying its motion to compel arbitration of the claims of Tina G. Conner, the plaintiff below. We reverse and remand.
 Facts
Conner applied for and received a VISA credit card from Providian.[1] In March 2001, Providian mailed to its cardholders a notice of changes in the terms of their credit-card agreements with Providian. Conner's March statement contained the following language, prominently placed on the statement:
 "* * * PLEASE SEE ENCLOSED IMPORTANT LEGAL NOTICE CONCERNING THE ADDITION OF AN ARBITRATION PROVISION TO YOUR ACCOUNT AGREEMENT. PLEASE READ IT CAREFULLY AND KEEP IT FOR YOUR RECORDS. * * *"
(Capitalization in original.)
A separate document entitled "IMPORTANT LEGAL NOTICE OF CHANGE TO YOUR ACCOUNT AGREEMENT" (hereinafter "the notice") was also enclosed with the March statement. The notice informed cardholders that an arbitration provision contained in the notice would become part of their existing credit-card agreements. *Page 716 
The arbitration provision contained in the notice states that either the cardholder or Providian could elect to have the other party's claims resolved by arbitration, and it outlined the procedures that would be employed if either party elected to submit a claim to arbitration. The arbitration provision defined "claim" as
 "any dispute between you and us that arises as a result of or has anything at all to do with: (1) your Account; (2) the events leading up to your becoming an accountholder; (3) this Agreement; (4) any prior credit account or agreement relating to such account; or (5) your relationship with us. . . ."
The notice further informed cardholders that the arbitration provision would "become effective forty-five (45) calendar days after the Statement Date on the enclosed billing statement . . .unless [Providian] receive[d] prior to then a letter from [the cardholder] stating that [the cardholder did] not want the Arbitration Provision to become a part of the Agreement." The notice also provided an address where any correspondence could be directed. Providian has no record of a letter from Conner exercising the option of not accepting the arbitration provision, and Conner does not contend that she did so.
On November 7, 2002, Conner sued Providian[2] asserting that Providian had wrongfully presented checks against Conner's personal checking account. Specifically, Conner alleged that in 2002 Providian obtained her personal checking-account information and then, allegedly without her permission, "wrongfully presented checks against [Conner's] checking account" for payment to her credit-card account. The complaint alleged conversion, trespass, conspiracy, fraud, negligence, the tort of outrage, negligent supervision, intentional infliction of emotional distress, wantonness, and intentional interference with Conner's business relationship with her bank. Conner sought compensatory and punitive damages not to exceed the specific maximum sum of $74,999.
On December 19, 2002, Providian filed a motion to compel arbitration in this case. Providian argued that its relationship with Conner was governed by a contract that included an arbitration provision; therefore, it asked the trial court to direct Conner to submit her claims to arbitration. In support of its motion to compel arbitration, Providian submitted an affidavit of Michael Cioe, director of Providian Bancorp Services (a servicing affiliate of Providian); a copy of Conner's March 2001 statement; a copy of the notice; and copies of various rules of the American Arbitration Association.
Conner submitted a brief in opposition to the motion to compel arbitration. In support of her brief, Conner included what appears to be several pages from a response to an interrogatory in another action involving different parties. Conner offered no other evidence in support of her opposition to Providian's motion to compel arbitration.
On March 18, 2003, Conner amended her complaint, stating that Providian's actions in this case constituted felonies. She cited Ala. Code 1975, § 6-5-370, which provides: "For any injury, either to person or property, amounting to a felony, a civil action may be commenced by the party injured without prosecution of the offender."
On March 19, 2003, the trial court held a hearing on Providian's motion to compel *Page 717 
arbitration. On April 16, 2003, the trial court issued an order denying Providian's motion and ordering Providian to comply with the discovery requests Conner had filed in the action. Providian appeals.
 Standard of Review
This Court reviews an order denying a motion to compel arbitration de novo. Potts v. Baptist Health Sys., Inc.,853 So.2d 194 (Ala. 2002); Vann v. First Cmty. Credit Corp.,834 So.2d 751, 752-53 (Ala. 2002). Furthermore,
 "[a] party seeking to compel arbitration has the burden of proving: (1) the existence of a contract containing an arbitration agreement and (2) that the underlying contract evidences a transaction affecting interstate commerce. Once those two items have been shown, the burden shifts to the opposing party to present evidence either that the arbitration agreement is not valid or that it does not apply to the dispute in question."
Jim Walter Homes, Inc. v. Saxton, 880 So.2d 428, 430 (Ala. 2003) (citations omitted).
 Discussion
Conner argues that the arbitration provision contained in the notice sent to cardholders is not part of her credit-card agreement with Providian. However, Providian produced substantial evidence indicating that the arbitration provision in the notice became part of the credit-card agreement. Specifically, Cioe testified in his affidavit (1) that Conner entered into a credit-card agreement with Providian, (2) that a copy of the notice (which contains the arbitration provision) was mailed to Conner with her March 2001 statement, and (3) that Conner did not opt out of the arbitration provision, as the notice indicated she could have.
This Court has previously held that this exact factual scenario, involving apparently the same notice and the same arbitration provision, results in the cardholder's acquiescing to the addition of the arbitration provision to the cardholder's credit-card agreement. In Providian National Bank v. Screws,894 So.2d 625 (Ala. 2003), this Court held:
 "In March 2001 . . . [Providian] notified holders of its credit card, including the plaintiffs, of a change in the terms of the credit-card agreement, inserting into the agreement an arbitration provision. Providian notified its cardholders of this change in the terms of their credit-card agreements by enclosing a notice in the monthly billing statement. The front page of the regular account statement contained the following language:
 "`* * * PLEASE SEE ENCLOSED IMPORTANT LEGAL NOTICE CONCERNING THE ADDITION OF AN ARBITRATION PROVISION TO YOUR ACCOUNT AGREEMENT. PLEASE READ IT CAREFULLY AND KEEP IT FOR YOUR RECORDS. * * *'
"(Capitalization in original.)
 "A separate document labeled `Important Legal Notice of Change to Your Account Agreement' was enclosed with the monthly statement containing the above language. This notice informed the cardholder that an arbitration provision had been added to the credit-card agreement. The notice set out the terms of that provision; explained the differences between resolving claims in arbitration as opposed to court proceedings; and set out those claims that could be arbitrated. . . .
"`. . . .'
 ". . . [U]nder the definition of `claim' in the arbitration provision, the plaintiffs' *Page 718 
claims would be subject to arbitration.
 "Importantly, acceptance of the arbitration provision by the cardholder was not mandatory. The notice enclosed within the monthly billing statement began by stating:
 "`This notice is to advise you that the following Arbitration Provision will be added to your Account Agreement (the "Agreement"). The Arbitration Provision will become effective forty-five (45) calendar days after the Statement Date on the enclosed billing statement . . . unless we receive prior to then a letter from you stating that you do not want the Arbitration Provision to become part of the Agreement. . . . If we receive such a letter on time, the Arbitration Provision will not become part of the Agreement, and the status of your Account will be unaffected by your rejection of the Arbitration Provision.'
 "(Emphasis in original.) Therefore, based on the 45-day time frame contained in the notice, the arbitration provision, if not rejected, became effective in late April or early May 2001, depending on the date of the individual cardholder's billing statement. None of the plaintiffs rejected the arbitration provision. Approximately 15 months later, in August 2002, the plaintiffs filed this action.
 "On September 13, 2002, Providian filed a motion to compel arbitration. . . . On December 5, 2002, the circuit court denied Providian's motion to compel arbitration. Providian appealed.
". . . .
 "This Court has previously enforced an arbitration provision added to credit-card agreements by amendment. See Ex parte Colquitt, 808 So.2d 1018
(Ala. 2001). Further, this Court has continually held that express assent is not required in order for an arbitration provision to be enforceable. SouthTrust Bank v. Williams, 775 So.2d 184, 189 (Ala. 2000) (holding that an arbitration provision added to a customer's account agreement by notice was valid and enforceable); Woodmen of the World Life Ins. Soc'y v. Harris, 740 So.2d 362, 367 (Ala. 1999) (holding that express assent to an arbitration provision is not required when the arbitration provision is added by amendment); Ex parte Rager, 712 So.2d 333, 335
(Ala. 1998) (noting that the inclusion of an arbitration provision is not a material alteration to an insurance policy requiring a signed application); Southern Foodservice Mgmt., Inc. v. American Fid. Assurance Co., 850 So.2d 316 (Ala. 2002) (same).
 "In fact, the Legislature, by enacting Ala. Code 1975, § 5-20-5, has provided a procedure for credit-card companies to amend their agreements with cardholders pursuant to which the cardholders' assent to the amendment can be deduced from their failure to respond:
 "`Notwithstanding the provisions of any other law, in connection with a credit card account, any domestic lender or any credit card bank may provide in the credit card agreement . . . such . . . terms and conditions as such domestic lender or credit card bank and the debtor may agree from time to time. . . . In the event any domestic lender or credit card bank desires to modify in any respect any term of the credit card account, it shall first provide at least 30 days' prior written notice of such modification to the debtor. In providing such notice, such domestic lender or credit card bank shall advise the debtor in writing that the debtor has the option (i) to surrender the credit card whereupon *Page 719 
the debtor shall have the right to continue to pay off the credit card account in the same manner and under the same terms and conditions as then in effect; or (ii) to hold the credit card after the 30-day period has elapsed, or to use the credit card during such period, either of which shall constitute the debtor's consent to the modification.'
 "(Emphasis added.) In modifying the terms of its credit-card agreement by adding the arbitration provision, Providian went beyond the requirements of § 5-20-5 by (1) allowing the cardholder 45 days to reject the provision, and (2) allowing the cardholders to keep their original contract terms with Providian in the event they chose to reject the arbitration provision.
"We analyzed and approved a similar modification in terms inSouthTrust Bank, 775 So.2d 184, 190:
 "`Indeed, it is precisely this kind of acquiescence that forms the basis for the implicit assent to modification of a credit-card-account term, as set forth in Ala. Code § 5-20-5. . . .
"`". . . ."
 "`. . . In other words, [§ 5-20-5] expressly provides that original agreements may be amended by the lender, based upon the apparent acquiescence of the cardholder, with or without a change-in-terms clause such as the ones involved in this case.'
 ". . . Following this reasoning, we hold that the plaintiffs' failure to reject the arbitration provision within 45 days of receiving notice that it was being added to their credit-card agreements amounted to acquiescence to include the arbitration provision in their credit-card agreements."
Providian Nat'l Bank, 894 So.2d at 628. Under ProvidianNational Bank, the arbitration provision mailed to Conner in March 2001 became part of the credit-card agreement between her and Providian when she failed to reject the arbitration provision as the notice indicated she could.
There is no dispute that the underlying contract in this case evidences a transaction affecting interstate commerce. It is undisputed that Conner is a resident citizen of Alabama. Cioe's affidavit indicates that Providian's principal place of business is in New Hampshire, where Conner sent her monthly payments. Additionally, Providian sent Conner monthly bills from Columbus, Georgia. See Providian Nat'l Bank, 894 So.2d at 627 (noting that a contract "concerning the terms of a credit agreement between a national bank and the holders of its card — clearly involves interstate commerce").
Providian presented substantial evidence of the existence of a contract containing an arbitration provision and that the contract evidences a transaction affecting interstate commerce. Thus, the burden shifted to Conner to present evidence that either the arbitration provision is not valid or that it does not apply to the dispute in question.
Conner claims that she did not assent to the addition of the arbitration provision to the credit-card agreement because, she says, she did not receive the notice and did not sign any document agreeing to arbitration. However, Conner made this assertion only in her brief opposing the motion to compel arbitration in the trial court. As this Court has noted, "`[s]tatements in motions and briefs are not evidence to be considered by the trial court in ruling on a motion to compel arbitration.'" Serra Toyota, Inc. v. Johnson, 876 So.2d 1125,1129 (Ala. 2003) (quoting Tefco Fin. Co. v. Green,793 So.2d 755, 760 n. 6 (Ala. 2001)). Furthermore, "[i]f [a] party presents no evidence in opposition to *Page 720 
a properly supported motion to compel arbitration, then the trial court should grant the motion to compel arbitration." Ex parteGreenstreet, Inc., 806 So.2d 1203, 1209 (Ala. 2001). Conner did not provide the trial court with an affidavit or other evidence establishing that she did not receive notice of the change in the credit-card agreement or that she otherwise did not agree to the arbitration provision. Therefore, she failed to meet her burden of production in establishing that the arbitration provision is invalid or that it does not apply to the dispute in this case.
Conner also maintains that because the underlying conduct she alleges Providian engaged in could constitute various felonies, arbitration is inappropriate. Conner explains this issue as follows:
 "[Conner's claims are] based upon Felony Acts and that to impose mandatory arbitration, would give up one's constitutional right to a trial by jury for such Felony Acts would be unconscionable and against the public policy of the people of the State of Alabama. Under no guise should a person be obligated to recognize any arbitration agreement to settle a claim which arises from any Felony Act."
Conner's brief at 17-18.
Conner asserts no authority for the proposition that, because the acts forming the basis of her civil complaint could constitute felonies, arbitration is inappropriate. Indeed, Conner does not explain how the fact that those acts could constitute felonies makes resolution of her civil claims more appropriate in the circuit court rather than in arbitration, or how such claims are otherwise not suited for arbitration. Therefore, we need not address this issue. See BankAmerica Hous. Servs. v. Lee,833 So.2d 609, 620-21 (Ala. 2002) (noting that it is not the duty of an appellate court to undertake to do legal research or create legal arguments for a party on appeal); see also Rule 28(a)(10), Ala. R.App. P. (requiring that arguments in a brief contain "citations to the cases, statutes, other authorities, and parts of the record relied on").
 Conclusion
Providian presented substantial evidence of the existence of a contract containing an arbitration provision and that that contract evidences a transaction affecting interstate commerce. Conner failed to present evidence either that the arbitration provision is not valid or that it does not apply to the dispute in question. Therefore, the trial court's order denying Providian's motion to compel arbitration is reversed and the case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and HOUSTON, SEE, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] According to an affidavit in the record supplied by Providian, Conner's account with Providian was opened on April 3, 2000. At one point during the proceedings in the trial court Conner disputed this fact; however, no evidence was offered in the trial court contradicting Providian's assertion.
[2] Conner also named Allied Interstate, Inc. ("Allied"), as a defendant. Although it appears from the record that Allied is a collection agency used by Providian, the parties do not explain Allied's role in this case, and Allied is not a party to this appeal.