NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0409n.06

No. 15-4195

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 21, 2016
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| BRIAN USZAK, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| AT&T MOBILITY SERVICES LLC and ANDREW | ) |
| ACORD, | ) |
| | ) |
| Defendants-Appellees. | ) |
| | ) |

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
NORTHERN DISTRICT OF
OHIO

Before: BATCHELDER and KETHLEDGE, Circuit Judges; and LEVY, District Judge.[*]

LEVY, District Judge. This case concerns the enforceability of an arbitration agreement between Brian Uszak, a former manager of an AT&T store, and AT&T Mobility Services, LLC, Uszak's former employer. Following an evidentiary hearing, the district court issued an order determining that the arbitration agreement was enforceable, and dismissed the case. Because the district court correctly applied the relevant law and committed no clear error in determining the facts of the case, we affirm.

## I.    BACKGROUND

AT&T Mobility Services employed Uszak as the Retail Sales Manager of its Elyria, Ohio store. (R.1 at PageID #4.) On May 29, 2014, AT&T fired Uszak for an incident of "horseplay" that it claimed violated its internal conduct policies. (R.1-1 at PageID #13.) On November 20,

---

[*] The Honorable Judith E. Levy, United States District Judge for the Eastern District of Michigan, sitting by designation.

2014, Uszak filed suit in the Lorain County Court of Common Pleas against AT&T and Andrew Acord, who Uszak claimed was his manager. (*Id.* at 10.) The suit alleged age and gender discrimination claims against both defendants under Ohio law. (*Id.* at 14-16.) On December 19, 2014, AT&T removed the case to the Northern District of Ohio on diversity grounds, claiming that Acord was fraudulently joined, because he was not Uszak's manager. (R.1 at PageID #3.) AT&T filed a motion to compel arbitration on December 22, 2014. (R.5.)

The basis of the motion was a Management Arbitration Agreement ("MAA") that AT&T sent to Uszak via his internal company e-mail three times: on December 5, 2011, at 4:05 A.M. PST, December 17, 2011, at 12:02 A.M. PST, and January 17, 2012, at 1:05 A.M. PST. (R.5-1 at PageID #64; R.28 at PageID #362-63.) On January 21, 2012, at 11:02:39 A.M. PST, someone logged in under Uszak's account opened the e-mail, and at 11:03:04 A.M. PST, that same person clicked the "Review Completed" button embedded in the e-mail. (*See* R.5-3 at PageID #106.)

On May 13, 2015, the district court issued an order determining that, following review of the briefs, an evidentiary hearing was necessary on the motion to compel arbitration. (R.18.) On May 22, 2015, the parties submitted lists of witnesses to be called at the hearing. (R.19, 20.) On May 26, 2015, the district court set July 30, 2015, as the date for the evidentiary hearing. (R.21.) On July 9, 2015, Uszak filed a motion to convert the evidentiary hearing into a jury trial (R.23), which the district court denied on July 15, 2015, as untimely under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. (R.25.)

The district court held the evidentiary hearing on July 30, 2015. (R.28.) AT&T called four witnesses, each of whom Uszak cross-examined: James Grzegorczyk, an area retail sales manager for AT&T who supervised Uszak from 2011 until his termination in 2014 (*id.* at 314-32), Cathy Matyola, who was the program manager for the compliance organization within

AT&T in 2011 and 2012 (*id.* at 332-58), Jeremy Dunlap, who performed operations support for Accenture (the company that ran AT&T's electronic rollouts of internal policies to employees) in 2011 and 2012 (*id.* at 358-75), and Susan Bounds, AT&T's director of compliance. (*Id.* at 376-81.) Uszak called five witnesses: Farrah Fritsch, a former AT&T store manager who left the company in 2012 (*id.* at 382-94), Uszak himself (*id.* at 394-414), Christopher Veverka, a former AT&T retail sales consultant and store manager who worked under Uszak at the Elyria store (*id.* at 414-25), Seth Pezzopane, a former AT&T retail sales manager (*id.* at 425-31), and Daniel Copeland, a former AT&T customer service representative. (*Id.* at 432-33.) AT&T did not cross-examine Fristch, and the district court did not permit Copeland to testify. (*Id.* at 433.)

The testimony established that employees had at least two accounts associated with their unique username ("UID"): a point-of-sale system called "OPUS" and an e-mail account. (*Id.* at 319.) The passwords on these systems were normally different. (*Id.* at 321.) AT&T used a tool called "Promenta" to roll out policies to employees' e-mail accounts. (*Id.* at 342-43.) When a new policy was sent out, but not reviewed, reminders were also sent to employees. (*Id.* at 349.)

Grzegorczyk testified that AT&T had policies requiring employees to keep their passwords secret, and that there would be no reason for a non-manager employee to need a manager's password. (*Id.* at 321-22.) Fritsch testified that she could not recall sharing her password with anyone, or anyone sharing their password with her. (*Id.* at 385, 387-88.) She also testified that store manager UIDs and OPUS passwords were required for early upgrades, overrides, exchanges, returns, and employee discounts. (*Id.* at 385-86.) If a manager were not available, the assistant manager's own UID and OPUS passwords could perform the same tasks, and the store manager could also select two delegates who could perform those tasks using their own passwords. (*Id.* at 386-87.)

Uszak, however, testified that he shared his OPUS password with other employees, and that other employees shared their passwords with him. (*Id.* at 398-99.) He also testified that at unspecified times, he would sometimes go to use a store computer and find that someone else was still logged in. (*Id.* at 401-02.) Uszak further testified that employees performed trainings for each other to keep themselves off of "the naughty list" by using other employees' passwords. (*Id.* at 402.) Uszak did not, however, offer evidence or testimony that a "naughty list" existed with regard to the MAA. Veverka and Pezzopane likewise testified that store managers shared their UIDs and OPUS passwords with each other for the purposes of completing transactions. (*Id.* at 416-19, 426-27.) Veverka, however, testified that the *only* reason an employee would have used a manager's password was for customer transactions, and not for training. (*Id.* at 424.)

On October 6, 2015, the district court entered an order granting the motion to compel arbitration. (R.32.) In relevant part, the court determined that the evidence showed AT&T had successfully transmitted the MAA to Uszak's UID on three separate occasions (*id.* at 464), and that on January 21, 2012, someone logged in under Uszak's credentials and clicked the "Review Completed" button on the MAA e-mail. (*Id.* at 465.) Uszak never opted out of the MAA. (*Id.*) The district court then determined that the arbitration agreement was valid under Ohio law and governed the dispute between Uszak and AT&T, and dismissed the case. (*Id.* at 466-68.)

## II.    ANALYSIS

We review *de novo* a district court's conclusions of law and its determination to compel arbitration. *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 487 (6th Cir. 2001). We review a district court's findings of fact following an evidentiary hearing or bench trial on a motion to compel arbitration for clear error. *Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005).

Uszak makes four arguments disputing the district court's determination that the MAA is enforceable. They are: 1) the existence of a question as to whether Uszak agreed to the MAA, which creates a presumption against arbitration; 2) no valid arbitration agreement exists under Ohio law, making the MAA unenforceable; 3) a genuine issue of material fact exists as to whether Uszak was the one who received and accessed the message containing the MAA; and 4) the procedural unconscionability of the MAA. The first argument is subsumed by the second, as the second repeatedly challenges Uszak's agreement to the terms of the MAA.

In determining whether it is proper to grant a motion to compel arbitration, the court must perform four tasks: 1) it must determine whether the parties agreed to arbitrate; 2) it must determine the scope of the arbitration agreement; 3) if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and 4) if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Uszak challenges only the first of these four prongs.

### A. The MAA Is Valid Under Ohio Law

"A written agreement to arbitrate disputes arising out of a transaction in interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (quoting 9 U.S.C. § 2). The FAA "is at bottom a policy guaranteeing the enforcement of private contractual agreements" arising from a "liberal federal policy favoring arbitration agreements." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

"Because arbitration agreements are fundamentally contracts, we review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir.2007) (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943-44 (1995)). In Ohio, "[a] contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Rayess v. Educ. Comm'n for Foreign Med. Graduates*, 983 N.E.2d 1267, 1271 (Ohio 2012) (quoting *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002)) (further citation omitted).

Uszak first argues that he "never received an offer or conveyed his acceptance to be bound by an agreement to arbitration." (Appellant Br. 27.) Uszak argues that AT&T only created and distributed the MAA, but that his reading of the document, failure to opt-out, and clicking on the "Review Completed" link would not constitute an acceptance or even acknowledgment of the MAA. (*Id.* at 27-29.) Uszak implies elsewhere in his brief that someone else may have logged in to his e-mail on January 21, 2012, whether intentionally or accidentally, then reviewed and accepted the MAA on his behalf. (*Id.* at 24.)

At the evidentiary hearing, Uszak provided no evidence that another employee possessed his e-mail password as opposed to his OPUS password (which was supposed to be different than his e-mail password), or that another employee actually accessed his e-mail and consented to the MAA in his stead. Uszak's affidavit concerning the sharing of passwords by employees generally, and sharing of his password with other employees in his store specifically (R.7-1 at PageID #129), was contradicted by the testimony of other employees in two ways. First, at least

one witness, Fritsch, did not remember ever having or using any of Uszak's passwords. Second, to the extent that Uszak *did* provide his password to other employees, it was for the purpose of customer service through OPUS, not for completing trainings or acknowledging policies. Uszak also gave no reason why someone else would have been compelled to accept the MAA on his behalf, as he presented no evidence that any negative consequence would accrue if he did not accept the MAA.

The district court's determination that Uszak was the person who opened the MAA e-mail and confirmed review of the e-mail was not clearly erroneous. Uzsak's "evidence" that someone else clicked the "Review Complete" button consists of pure conjecture: he may have left his e-mail account open, and an unidentified other employee may have opened the MAA e-mail and clicked the "Review Complete" button. There was no reason for Uszak's hypothetical coworker to have done this. Further, even assuming that a culture of sharing UIDs and OPUS passwords existed, Uszak failed to provide any evidence that an employee with his OPUS password could have accessed his e-mail, especially because testimony established Uszak's e-mail likely had a different password than his OPUS account.

Uszak also argues that clicking the "Review Complete" button and failing to opt out does not constitute acceptance under Ohio law. He relies on *Harmon v. Phillip Morris, Inc.*, in which the Ohio Court of Appeals for the Eighth District determined that a signed acknowledgment of receipt of an arbitration agreement, by itself, "does not constitute acceptance of an offer to modify the terms of [an employee's] employment." *Harmon v. Philip Morris, Inc.*, 697 N.E.2d 270, 272 (Ohio Ct. App. 1997). In *Harmon*, the employee was given program brochures regarding a new arbitration program and a document entitled "Acknowledgment" by his employer. *Id.* at 270-71. The "Acknowledgment" document contained no consideration for the

change to the terms of employment, but instead threatened termination of employment for failure to sign the acknowledgment. *Id.* at 272. The court determined that the acknowledgment did not serve as an acceptance of the new arbitration program, but was instead exactly what it said it was: a statement that he received and understood the documents regarding the arbitration program. *Id.*

> Here, the message Uszak received regarding the MAA on January 18, 2012 stated:
>
> The decision on whether or not to participate is yours to make. To help you make your decision, **it is very important for you to review the Management Arbitration Agreement linked to this email.** It provides important information on the process and the types of disputes that are covered by the Agreement.
>
> Again, the decision is entirely up to you. To give you time to consider your decision, the company has established a deadline of no later than 11:59 p.m. Central Standard Time on Monday, Feb. 6, 2012 to opt out – that is, decline to participate in the arbitration process – using the instructions below.
>
> If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement. This means that you and AT&T are giving up the right to a court or jury trial on claims covered by the Agreement.

(R.5-2 at PageID #77.) Unlike in *Harmon*, the documentation AT&T provided Uszak clearly indicated a method for acceptance or rejection of the MAA, rather than just a method for acknowledging receipt of the MAA. Uszak had the opportunity to opt out of the MAA, but instead the district court found that he clicked on a link verifying that he had reviewed the documents, and then took no further action.

An employee who signs a form (in this case, electronically) indicating that he understands his obligations if he chooses not to participate in an arbitration program, fails to take the required action to opt out, and never provides any other notice to management that he intends to opt out, has "demonstrated his agreement to be bound" by an arbitration agreement. *Legair v.*

*Circuit City Stores, Inc.*, 213 F. App'x 436, 439 (6th Cir. 2007). Uszak, based on the evidence presented in the district court, demonstrated his agreement to be bound by the MAA through his failure to take any of the available steps to opt out of the agreement.

Uszak next argues that there was no consideration in the MAA, because he never received, read, or reviewed it, and it was never communicated to him. Uszak did not make this argument in the district court. (R.32 at PageID #461.) Generally, "an argument not raised before the district court is waived on appeal to this Court." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) (further citations omitted). However, because the district court addressed the issue despite Uszak's failure to raise it, we will address it here.[1]

"Consideration may consist of either a detriment to the promisee or a benefit to the promisor." *Williams v. Ormsby*, 966 N.E.2d 255, 259 (Ohio 2012) (citing *Irwin v. Lombard Univ.*, 46 N.E. 63, 65 (Ohio 1897)). Whether a contract offers consideration is determined by looking to the content of the contract, not to the separate issue of whether there was offer and acceptance. "A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee." *Id.* (further citation omitted). Uszak's only argument in this regard is that "the lack of consideration is demonstrated by the fact that AT&T did not require Uszak to sign the Arbitration Agreement as a condition of continued employment." (Appellant Br. 29.) Uszak cites no case law for the proposition that consideration must consist of the conditioning of continued employment on acceptance of an arbitration agreement.

---

[1] We note that Uszak's claims that the MAA was never communicated to him and that he never received it are belied by the record, which shows that the MAA was sent to his UID three separate times. The MAA e-mail was also available in Uszak's personal inbox on January 21, 2012, when Uszak clicked the "Review Completed" button.

A mutual agreement by both parties to submit a claim to arbitration is sufficient consideration under Ohio law. *Dantz v. Am. Apple Group, LLC*, 123 F. App'x 702, 708-09 (6th Cir. 2005). The MAA requires both the employee and AT&T to "giv[e] up the right to a court or jury trial on claims covered by the Agreement." (R.5-2 at PageID #77.) Accordingly, consideration exists here.

Uszak next argues that the parties did not manifest mutual assent, because he did not accept the MAA, as he never read, reviewed, acknowledged, or assented to it. (Appellant Br. 30.) In Ohio, mutual assent is manifested "generally [by] offer and acceptance." *Schlaegel v. Howell*, 42 N.E.3d 771, 778 (Ohio Ct. App. 2015). Having already determined that the MAA was offered and Uszak accepted it, this argument necessarily fails.

Uszak likewise argues that there was no meeting of the minds, because he never received the MAA. Under Ohio law, the parties must have a "meeting of the minds as to the essential terms of the agreement." *Campanella v. Commerce Exch. Bank*, 745 N.E.2d 1087, 1095 (Ohio Ct. App. 2000) (quoting *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgmt.*, 622 N.E.2d 1093, 1097-98 (Ohio Ct. App. 1993)). Having already determined that Uszak received the MAA, including all relevant terms, and that he then agreed to be bound by those terms, the parties had a meeting of the minds as to the essential terms of the MAA.

Finally, Uszak notes that arbitration agreements "must have 'mutuality' in the form of a binding promise to arbitrate in exchange for a binding promise to arbitrate, which is noticeably absent in this case." (Appellant Br. 31.) The MAA binds both parties to arbitrate. (R.5-2 at PageID #77.) It is unclear what, then, is "noticeably absent" from the MAA.

*B. Any Genuine Issue of Material Fact Regarding Uszak's Receiving or Accessing the MAA Was Resolved at the Evidentiary Hearing*

Uszak contends (for the fifth time) that he did not receive or access the MAA, and that this dispute creates a genuine issue of material fact. This is the conclusion the district court came to when it ordered an evidentiary hearing on May 13, 2015. (R.18.)

The district court held the evidentiary hearing to resolve the genuine issues of material fact with regard to the motion to compel arbitration, including the one Uszak raises here. As set forth above, the district court's findings of fact are reviewed for clear error, and the district court did not commit clear error in determining that Uszak accessed his e-mail, reviewed the MAA, clicked the "Review Completed" button, and never opted out of the terms of the Agreement.

*C. The Procedural Unconscionability Argument Is Waived.*

Uszak did not raise his procedural unconscionability argument in the district court, and the district court did not address the issue. Accordingly, this argument is waived here.

## III.   CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.